UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| ELI ERICKSON,<br><br>        Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | 3:22-CV-03004-RAL<br><br><br>OPINION AND ORDER GRANTING<br>GOVERNMENT'S MOTION TO DISMISS<br>AND DENYING PETITIONER'S § 2255<br>MOTION |

In November of 2019, a jury convicted Plaintiff Eli Erickson of conspiracy to distribute a controlled substance, possession of a firearm in furtherance of a drug trafficking crime, and several other counts. CR Doc. 108.[1] This Court sentenced Erickson to 188 months, and his convictions were affirmed by the United States Court of Appeals for the Eighth Circuit. CR Doc. 180 at 2. Erickson has now filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, appearing to allege that two of his former defense attorneys filed continuances without his consent, that those same two attorneys failed to take other actions amounting to ineffective assistance of counsel, and that agents of the government engaged in prosecutorial misconduct that denied him his right to a fair trial. Doc. 1 at 3–4. Erickson also has filed a motion for court-appointed counsel. Doc. 2. After this Court screened the § 2255 motion and ordered the United States to respond, Doc. 4, the United States filed a motion to dismiss. Doc. 16. For the reasons

---

[1] Docket entries from Erickson's criminal case (3:18-CR-30148-RAL-1) will be cited as "CR Doc." Docket entries from the present case will be cited as "Doc."

stated below, this Court grants the United States' motion to dismiss, denies Erickson's request for court-appointed counsel, and denies Erickson's § 2255 motion.

## I. Summary of Facts from Underlying Case

This Court has already summarized the facts of Erickson's underlying criminal offenses, trial, and conviction at-length on several occasions. See, e.g., CR Doc. 133; CR Doc. 150. The summary below borrows heavily from this Court's Opinion and Order Denying Motion for Acquittal or New Trial, CR. Doc 133, which the Eighth Circuit affirmed, CR Doc. 180.

On November 14, 2018, Erickson was indicted as the lone defendant in a seven-count indictment. CR Doc. 1. Count 1 of the indictment alleged conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. Count 2 of the indictment alleged that Erickson had possessed six different firearms in relation to a drug trafficking crime. Count 3 claimed that Erickson had illegally possessed a short-barreled shotgun. Count 4 charged that Erickson had possessed a shotgun with an obliterated serial number. Count 5 alleged that Erickson had possessed six different firearms at a time when he was an unlawful user of and addicted to a controlled substance. Counts 6 and 7 charged possession on particular dates of a rifle and a pistol respectively at a time when Erickson was an unlawful user of and addicted to a controlled substance.

Criminal Justice Act (CJA) panel attorney Terra Fisher (a/k/a Terra Larson) was Erickson's original court-appointed attorney. CR Doc. 10. Consistent with the Speedy Trial Act, this Court entered an early Scheduling and Case Management Order setting a jury trial for January 22, 2019. CR Doc. 16. In late December of 2018, Erickson sought to have different counsel appointed for him, and Magistrate Judge Mark A. Moreno met with Erickson and attorney Fisher in chambers on January 4, 2019. Magistrate Judge Moreno thereafter denied Erickson's request for substitute

2

counsel. CR Doc. 26. Fisher, on behalf of Erickson, made a motion to continue the jury trial. CR

Doc. 30. Erickson signed the consent to a continuance bearing his signature, indicating that he

had been advised of his speedy trial right and consented to postponement of the trial.[2] CR Doc.

29. This Court granted the motion to continue, resetting the jury trial for April of 2019. CR Doc.

35. Meanwhile, Erickson's disagreements with Fisher continued, resulting in another motion to

withdraw, which Magistrate Judge Moreno granted on January 11, 2019. CR Docs. 31, 33.

Erickson's next appointed counsel was CJA panel attorney Jeffrey Banks. CR Doc. 33.

Banks filed a motion for continuance on behalf of Erickson after he had to postpone two meetings

with Erickson due to inclement weather[3] and had not been able to review the discovery with

---

[2] Due to inconsistent naming of the continuance motions filed in Erickson's criminal case, there is
some confusion over which consent forms Erickson now alleges were forged. There were five
continuance motions filed and granted in Erickson's criminal case. Larson filed Erickson's first
motion for a continuance. See CR Doc. 30 (first motion for continuance); CR Doc. 29 (signed
consent to first motion for continuance); CR Doc. 35 (order granting first motion for continuance
and extending case deadlines). Banks filed the rest of the continuances. See CR Doc. 39 (second
motion for continuance); CR Doc. 38 (signed consent to second motion for continuance; CR Doc.
40 (order granting continuance and extending case deadlines); CR Doc. 43 (third motion for
continuance); CR Doc. 44 (signed consent to third motion for continuance); CR Doc. 45 (order
granting continuance and extending case deadlines); CR Doc. 46 (fourth motion for continuance);
CR Doc. 47 (signed consent to fourth motion for continuance); CR Doc. 51 (order granting
continuance and extending case deadlines); CR Doc. 62 (fifth motion for continuance); CR Doc.
63 (signed consent to fifth motion for continuance); CR Doc. 64 (order granting fifth motion for
continuance). Banks titled the third motion for continuance as the "Second Motion for
Continuance," CR Doc. 44, the fourth motion for continuance as the "Third Motion for
Continuance," CR Doc. 46, and the fifth motion for continuance as the "Fourth Motion for
Continuance," CR Doc. 62. Erickson challenges the "Second, Third and Fourth Continuances
entered by his previous attorney," but is unclear whether he means the motions titled as such or
the order in which they were filed. Doc. 1 at 4. Based on Erickson's contention that the "first two
consents are signed in a different handwriting from the last three consents," it is likely that the first
two continuances are not contested and the last three, titled "Second Motion for Continuance,"
"Third Motion for Continuance," and "Fourth Motion for Continuance" are the contested motions.
Id. Regardless, the outcome here does not hinge on which specific consents were allegedly forged.
The continuances will be discussed in their numerical order to avoid confusion.
[3] Attorney Banks offices in Huron, South Dakota, and Erickson was detained pending trial more
than an hour's drive from Huron. There were several snowstorms in central South Dakota during
the first few months of 2019.

Erickson. CR Doc. 39. Erickson claims that he did not sign the consent bearing Erickson's signature and filed by Banks stating that Erickson had been advised of his Speedy Trial Act rights. CR Doc. 38. This Court granted a continuance and set the jury trial for June 11, 2019. CR Doc. 40. Banks filed another motion for continuance on behalf of Erickson on May 8, 2019, stating he had met with Erickson three times already but that more meetings were necessary for Banks to represent Erickson to the best of his ability. CR Doc. 43. This Court granted another continuance and set the jury trial for July 23, 2019. CR Doc. 45. Again, Erickson asserts he did not sign the consent form bearing his signature. Doc. 1 at 4.

On June 25, 2019, Banks on behalf of Erickson filed another motion for continuance, indicating that he was still receiving discovery from the government and was requesting funds for a private investigator to assist in locating and interviewing witnesses. CR Doc. 46. Erickson's signature appears on another consent—though Erickson claims he did not sign it—acknowledging that he had been advised of his speedy trial rights and waived the period of time of the continuance under the Speedy Trial Act. CR Doc. 47. By July, Erickson was dissatisfied with Banks, and Magistrate Judge Moreno held a hearing on July 1, 2019, to hear from Erickson and Banks, thereafter denying Erickson's request for new counsel. CR Docs. 49, 50. This Court granted the continuance requested by Banks on behalf of Erickson and set the jury trial for September 24, 2019. CR Doc. 51.

On September 10, 2019, the government filed a superseding indictment, making somewhat modest changes to the original indictment. CR Doc. 57. Erickson's disgruntlement with Banks continued, so Magistrate Judge Moreno held another hearing to consider Erickson's ex parte motion for new counsel and denied the motion. CR Docs. 58, 59. On the heels of the denial of new counsel, Banks filed another motion for continuance indicating that he was still preparing for

4

trial and that the work of the private investigator was ongoing.  CR Doc. 62.  Again, a consent bearing Erickson's signature appears alongside that motion for continuance, though Erickson again claims he never signed the consent form.  CR Doc. 63.  This Court granted the motion for continuance setting the trial to begin on November 5, 2019.  CR Doc. 64.

In October, Banks sought to withdraw because his attorney-client relationship with Erickson was "irrevocably broken."  CR Doc. 67.  Magistrate Judge Moreno granted the motion to withdraw, CR Doc. 68, and appointed CJA panel attorney John Rusch, CR Doc. 71.  Rusch was the trial counsel for Erickson during the trial that took place from November 5 through 7, 2019.  Erickson has no gripe about Rusch's representation.

Eight different witnesses testified about Erickson's involvement with methamphetamine on the Rosebud Indian Reservation.  The first such witness whom the Government called was Witness C,[4] who was serving a 25-year sentence for conspiracy to distribute methamphetamine. Witness C said that Erickson was like a brother to her and was solemn and emotional during her testimony.  Witness C testified that she obtained large quantities of methamphetamine in Lexington and Kearney, Nebraska, and elsewhere.  Witness C was living in Nebraska and dating a man with connections through which he purchased many pounds of methamphetamine, which Witness C helped distribute.  Witness C, who was from Rosebud, delivered methamphetamine to Erickson on the Rosebud Indian Reservation beginning in 2015 and continuing until she was imprisoned in late 2015.  On the first such occasion, Witness C brought methamphetamine to Erickson's home in South Antelope and sold three ounces (approximately 85 grams) of methamphetamine from Erickson's home.  Witness C testified that she took approximately 20 trips

---

[4] This Court filed a sealed opinion and order using the witness' actual names, but in this opinion and order seeks to protect witnesses who cooperated with the government by using pseudonyms.

from Nebraska to sell methamphetamine on the Rosebud Indian Reservation. After her first trip, she typically brought 1 to 3 pounds of methamphetamine to South Dakota on each trip, and the largest quantity she brought at any one time was between 8 to 12 pounds of methamphetamine. She typically split half of what she brought to South Dakota with Erickson, selling the rest herself sometimes from Sunrise Apartments in Mission and sometimes off the reservation in Rapid City. Using Witness C's most conservative estimate of 1 pound per trip on 20 trips, split evenly with Erickson, the drug quantity attributable to Erickson based on Witness C's testimony is at least 4535.9 grams (10 pounds x 453.59 grams/pound). Witness C typically fronted methamphetamine to Erickson, and Erickson gave her what he earned from the sales, sometimes about $3,000 per pound. Witness C saw Erickson distribute methamphetamine to at least three other individuals. Witness C brought Erickson guns and personally gave him one gun. Witness C testified that Erickson always carried a gun for protection. Witness C saw Erickson smoke methamphetamine but knew Erickson to use marijuana more frequently than methamphetamine.

Witness R testified that he was a friend of Erickson's entire family and bought methamphetamine from and sold methamphetamine to Erickson a couple of times in the 2014 to 2015 time period. Witness R recalled buying two to three ounces (56.7 to 85 grams) of methamphetamine from Erickson over the years and described Erickson as a "small time guy." The largest quantity of methamphetamine Witness R saw in Erickson's possession at any one time was two ounces. Witness R saw Erickson distribute methamphetamine to others at times and used methamphetamine with Erickson occasionally. Witness R observed firearms in and around Erickson's home but did not know whether they belonged to Erickson or to Erickson's brother or father. Witness R saw Erickson with a shotgun once. Witness R was serving a 120-month sentence

6

for conspiracy to distribute methamphetamine and received his methamphetamine primarily from Denver.

Witness MB, who was serving a 120-month sentence for conspiracy to distribute methamphetamine, testified that Erickson bought methamphetamine from him in November and December of 2017. Erickson visited multiple times in a week, buying half an ounce to one ounce on each occasion. Witness MB estimated that Erickson bought a total of approximately 10 ounces (283 grams) of methamphetamine, paying $1,000 to $1,100 per ounce. On one occasion at Erickson's home, Witness MB saw two ounces of methamphetamine in a bag on a counter and smoked methamphetamine with Erickson in his home. Witness MB saw Erickson with a shotgun in November of 2017, when Erickson tried to trade the shotgun for methamphetamine.

Witness TE, who was serving a 30-month sentence, dealt methamphetamine for Witness MB. Witness TE knows Erickson's "baby momma" Jaylen LaPointe. Witness TE sold 2 grams of methamphetamine for $175 to LaPointe when Erickson was present, but that was Witness TE's first time meeting Erickson.

Witness AB testified that she bought methamphetamine from Erickson in 2017. Witness AB twice purchased .5 grams (a 50-bag), for a total of one gram from Erickson. Witness AB bought those "50-bags" from a window on the side of Erickson's home. Witness AB saw Erickson in the bedroom smoking what appeared to be methamphetamine out of a lightbulb.

Witness W, who was serving a 120-month sentence for conspiracy to distribute methamphetamine, met Erickson at the end of 2014 and bought methamphetamine from Erickson in 2014 or 2015. Witness W purchased a couple of "eight-balls" (3.5 grams of methamphetamine each), paying between $300 and $450 for each eight-ball. To purchase methamphetamine, Witness W would drive to Erickson's home, and Erickson would come out and deliver the

7

methamphetamine to Witness W's female companion. Witness W used methamphetamine with Erickson at Witness R's home on one occasion. Witness W saw Erickson carrying a pistol in South Antelope.

Witness G, who had served a federal drug sentence as well, knew Erickson from middle school, but never dealt directly with Erickson on buying or selling methamphetamine. Witness G conspired to distribute methamphetamine with her then-boyfriend RGJ. Witness G made trips with RGJ, including to Erickson's home in South Antelope, to deliver methamphetamine in 2015 and 2016. Witness G would wait in the car while RGJ would deliver methamphetamine into Erickson's home. RGJ would return with over $100 and sometimes more than $1,000, and at other times with weapons, including firearms, after having gone into Erickson's home.

On October 22, 2016, Rosebud Sioux Tribe (RST) law enforcement responded to a call concerning a gun being fired at Erickson's home in South Antelope. Law enforcement originally suspected that Erickson was the shooter, although he was not. RST law enforcement, together with an FBI special agent, ultimately obtained a search warrant and searched Erickson's home on October 22, 2016. The search yielded pipes used for smoking methamphetamine, torches, ammunition, and two guns found in a bedroom where the first names of Erickson and his girlfriend were written on the wall. The jury convicted Erickson of offenses involving possession of those two firearms. Law enforcement found four additional firearms in an old Ford Mustang car located in the yard just a few feet behind Erickson's residence. Testimony during the trial suggested that those guns could have belonged to Erickson's brother, who had passed away earlier during the month of October of 2016. The jury did not convict Erickson on any offenses involving the firearms found in the Mustang.

RST law enforcement on June 3, 2018, executed a tribal search warrant on Erickson's home after a shooting where the shooter told law enforcement about obtaining the gun from Erickson. Law enforcement located a disassembled gun in a bucket in Erickson's home. Erickson was convicted by the jury on counts concerning this disassembled gun, which testimony established to qualify as a firearm under federal law. Law enforcement on June 3, 2018, also seized needles and baggies from Erickson's home that tested positive for methamphetamine residue.

On September 6, 2018, RST law enforcement officer Joshua Marti attempted to contact three individuals walking near Sunrise Apartments in Mission after Officer Marti observed the three behaving suspiciously. Erickson was one of two males who took off running to evade Officer Marti. Erickson jumped a fence and crouched near a pickup truck. As Officer Marti approached, Erickson fled from hiding near the pickup truck and dropped approximately $300 of cash out of his pocket before being apprehended. RST Special Agent Frank Iron Heart later found a handgun in the grill of the pickup truck where Erickson had been hiding.

Erickson testified during his jury trial, stating that he was unaware of any drugs in his home or of any guns in the Mustang located behind his home in October of 2016. Erickson denied that Witness C delivered methamphetamine to him and denied that he had any agreement with Witness C whom he characterized as a very heavy drug user. Erickson stated that he does not own a gun because he gets pulled over by cops a lot. Erickson denied knowing many of the individuals who testified and denied selling methamphetamine or setting up deals to sell methamphetamine. During a surprisingly brief cross-examination, Erickson testified that he never told Deputy Sheriff Dustin Baxter that he sold methamphetamine or set up deals to sell methamphetamine. Erickson on cross-examination also denied trying to get Witness JS to sell methamphetamine for him.

9

In the government's rebuttal case, Witness JS testified that Erickson tried to get Witness JS to sell methamphetamine for him in South Antelope in 2015. Witness JS also testified that he bought a couple "20s" ($20 bags of methamphetamine) from Erickson on four or five occasions at Erickson's home between June and August 2015. Witness JS saw seven or eight ounces (198.45 to 226 grams) of methamphetamine on the table in Erickson's home when he was there.

As a part of the government's rebuttal case, to refute Erickson's testimony that he never told Deputy Sheriff Baxter that he sold or set up deals for methamphetamine, Deputy Sheriff Baxter testified that he interviewed Erickson in September of 2005 in Nebraska. Erickson said during the interview that he set up methamphetamine deals and sold methamphetamine to another person. This Court instructed the jury to consider the testimony about Erickson's statements in 2005 (which was well outside the time frames alleged in the superseding indictment) only to assess Erickson's credibility.

The jury found Erickson guilty on Count 1 for conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. The jury also found Erickson guilty on Count 2 with respect to the two firearms located in his bedroom on October 22, 2016—an Amadeo Rossi Sociedade Anomina, model R92, .357 magnum caliber rifle; and a Remington Arms Company Incorporated, model 1100, 12-gauge shotgun—finding them to be used in furtherance of drug trafficking. The jury found Erickson not guilty on Count 2 with respect to four other firearms that had been seized from the Mustang parked behind his home in October of 2016. The jury found Erickson not guilty of Counts 3 and 4, which were counts related to two of the firearms found in the Mustang behind his home. The jury found Erickson guilty on Count 5 for the crime of being a drug user in possession of firearms based on possession of the same two firearms found in his bedroom, though he was found not guilty on Count 5 regarding the

four firearms found in the vehicle behind his home in October of 2016. The jury found Erickson

guilty on Counts 6 and 7 for drug user in possession of a firearm for a Armi Jager, .22 caliber rifle

taken from his home on June 3, 2018, and for a Beemiller Incorporated, Hi-Point brand name

Model C9, 9x19mm Luger caliber pistol found in the grill of a pickup where Erickson had hidden

from police on September 6, 2018.

Erickson received a sentence that aggregated to 188 months plus five years of supervised

release. On appeal, CR Doc. 157, the Eighth Circuit affirmed the conviction and sentence.

## II. Discussion

Erickson seeks relief pursuant to 28 U.S.C. § 2255. Section 2255(a) states:

> A prisoner in custody under sentence of a court established by Act of Congress
> claiming the right to be released upon the ground that the sentence was imposed in
> violation of the Constitution or laws of the United States, or that the court was
> without jurisdiction to impose such sentence, or that the sentence was in excess of
> the maximum authorized by law, or is otherwise subject to collateral attack, may
> move the court which imposed the sentence to vacate, set aside or correct the
> sentence.

When considering a § 2255 motion, a court holds an evidentiary hearing "unless the motion

and the files and the records of the case conclusively show that [the prisoner] is entitled to no

relief." Holder v. United States, 721 F.3d 979, 993 (8th Cir. 2013) (cleaned up and citation

omitted). "No hearing is required where the claim is inadequate on its face or if the record

affirmatively refutes the factual assertions upon which it is based." Watson v. United States, 493

F.3d 960, 963 (8th Cir. 2007) (cleaned up and citation omitted). The Eighth Circuit has stated:

> A § 2255 motion may be dismissed without a hearing if (1) movant's allegations,
> accepted as true, would not entitle him to relief, or (2) the allegations cannot be
> accepted as true because they are contradicted by the record, are inherently
> incredible, or are conclusions rather than statements of fact.

Winters v. United States, 716 F.3d 1098, 1103 (8th Cir. 2013) (cleaned up and citation omitted).

Because the record conclusively demonstrates that Erickson is not entitled to relief, an evidentiary

11

hearing is not necessary in this case. This Court can dismiss this case on the merits upon analysis of the substance of Erickson's § 2255 motion alleging ineffective assistance of counsel and prosecutorial misconduct.

## A. Ineffective Assistance of Counsel

Erickson's petition alleges that two of his former defense attorneys provided ineffective assistance of counsel by allegedly filing motions for continuances without Erickson's consent. Doc. 1 at 3–4. Three different lawyers represented Erickson during his criminal proceedings. Terra Larson (f/k/a Terra Fisher) represented Erickson from November 2018 to January 2019, Jeffrey Banks represented Erickson from January 2019 to October 2019, and John Rusch represented Erickson thereafter including during his jury trial from November 5 through 7, 2019.[5] CR Doc. 133 at 3–4.

Before Erickson went to trial, at least five motions for continuances were filed on his behalf apparently with his signed consent, and this Court granted all those motions. CR Doc. 133 at 3–4. Erickson contends that at least three of these continuances were filed without his consent and that his signature was forged on certain consent forms that were filed with this Court. Doc. 1 at 4. Erickson further alleges that Larson and Banks never made any visits to the jail to discuss motions he wanted filed and that deadlines in his case passed without either attorney filing a motion to suppress he had supposedly requested. Doc. 1 at 4. Erickson does not indicate what motion he wanted filed or what evidence he thought ought to be suppressed. Erickson is also unclear about whether his allegations are directed at Larson or Banks or both.[6]

---

[5] Rusch has represented Erickson pro bono thus far in the § 2255 proceeding, and Erickson has again moved to have this Court appoint him counsel, presumably wanting Mr. Rusch appointed.
[6] Erickson claims that his "first attorney" was ineffective because "he never saw his attorney, never discussed the case, and that deadlines were missed and motions were failed to be filed and that all of this was done by the Counsel filing Consents for Continuance which were never signed by the

12

Case 3:22-cv-03004-RAL   Document 20   Filed 11/03/22   Page 13 of 19 PageID #: 75

Larson and Banks separately have filed affidavits that contradict Erickson's assertions. Doc. 11; Doc. 14. The affidavits detail that both Larson and Banks met personally with Erickson on several occasions while he was in custody. During these visits, to the extent that Erickson was willing to engage in conversation at all, Erickson and his lawyers discussed details of his case and potential motions that could be filed, went over discovery, and importantly, agreed on the need for the various continuances. Doc. 11 at 3; Doc. 14 at 1–2. Both Larson and Banks are emphatic that they never signed a consent to a continuance on Erickson's behalf or forged Erickson's signature. Doc. 11 at 3; Doc. 14 at 2. Indeed, all of the consents to continuances bearing Erickson's signature—both those he contests and those he does not—bear a similar endorsement. See CR Docs. 29, 38, 44, 47, 63.

The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel in criminal prosecutions. U.S. Const. amend. VI; see also Gideon v. Wainwright, 372 U.S. 335, 339 (1963); Johnson v. Zerbst, 304 U.S. 458, 459 (1938); Powell v. Alabama, 287 U.S. 45, 63 (1932). To establish a claim of ineffective assistance of counsel, the petitioner must show both that his counsel's performance was deficient, and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To meet this two-pronged standard, the petitioner must show that "(1) his counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." United States v. Ledezma–Rodriguez, 423 F.3d 830, 836 (8th Cir. 2005). "Because the defendant

---

Plaintiff." Doc. 1 at 3–4. However, Larson, as Erickson's first attorney, only filed one continuance, which it does not appear to be contested based on Erickson's petition challenging the "Second, Third, and Fourth Continuances." Doc. 1 at 4. Again, this confusion is not determinative to the issues discussed.

must satisfy both prongs of the <u>Strickland</u> test to succeed on an ineffective-assistance claim, a court may decide such a claim by addressing either prong." <u>Ford v. United States</u>, 917 F.3d 1015, 1021 (8th Cir. 2019).

The first part of the <u>Strickland</u> test requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." <u>Williams v. United States</u>, 452 F.3d 1009, 1013 (8th Cir. 2006). The petitioner must "overcom[e] the strong presumption that defense counsel's representation fell 'within the wide range of reasonable professional assistance.'" <u>Delgado v. United States</u>, 162 F.3d 981, 982 (8th Cir. 1998) (quoting <u>Strickland</u>, 466 U.S. at 689). Courts are not to "second-guess" trial strategy. <u>Williams</u>, 452 F.3d at 1013. "The Sixth Amendment right to counsel functions to ensure that defendants receive a fair trial, not a perfect one." <u>Willis v. United States</u>, 87 F.3d 1004, 1008 (8th Cir. 1996).

"The second part of the <u>Strickland</u> test requires that the movant show that he was prejudiced by counsel's error[.]" <u>Williams</u>, 452 F.3d at 1013. This means proving that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Ford</u>, 917 F.3d at 1021.

As this Court ruled previously when it denied Erickson's motion for a new trial or acquittal, all of the signatures on the consent forms appear to be substantially similar. CR Doc. 133 at 14–15. Erickson has presented no additional evidence that the signatures were forged beyond his conclusory allegations. Nor has Erickson explained why he would refuse to consent to those continuances while at the same time declining to engage in meaningful discussions with his

14

lawyers on how to prepare his defense. Even if Erickson had not consented to the continuances—which this Court finds dubious—he would still be required to show that the delay in having his trial had some prejudicial effect on the outcome. If anything, the continuances allowed Erickson more time to prepare his defense and led eventually to the appointment of a third attorney, John Rusch, with whom Erickson was pleased and who tried the case for Erickson. Erickson has presented no evidence that the delay in having his trial had some conceivable effect on the outcome.

Moreover, while this Court has a practice of requiring signed consents to accompany criminal defendants' motions for continuances, this Court, even without a signed consent, can find that the ends of justice served by a continuance outweigh the interests in a speedy trial based on the information provided. See United States v. Dunn, 723 F.3d 919, 928 (8th Cir. 2013) (stating that a criminal defendant's personal consent not necessary if the ends of justice served by the continuance outweigh the defendant's interests in a speedy trial); United States v. Herbst, 666 F.3d 504, 510 (8th Cir. 2012) (citing 18 U.S.C. § 1361(h)(7)(A); United States v. Sobh, 571 F.3d 600, 603 (6th Cir. 2009)) ("We agree with the Sixth Circuit that the plain language of section 3161(h)(7)(A) does not require a defendant's consent to the continuance if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.") (cleaned up and internal marks omitted). Erickson's inability to work with his initial two court-appointed attorneys certainly provided ample independent reason to grant continuances, lest Erickson be forced to trial represented by an attorney whose preparation was hampered by Erickson's lack of cooperation and in whom Erickson lacked trust.

Erickson also does not provide any evidence to substantiate his claims that Larson and Banks missed deadlines to file a motion to suppress. For starters, each of the continuances that Erickson now denounces not only extended the date of his trial, but also extended the motions deadlines he now alleges were missed. Erickson and his attorneys had ample time to discuss and file any necessary pretrial motions, and the third attorney with whom Erickson has no gripe neither sought a continuance nor filed a suppression motion. Erickson has advanced no factual basis for his belief that counsel failed to file necessary pretrial motions and thus presented nothing to refute the strong presumption that counsel's decision not to file such a motion was a sound decision of trial strategy. See Strickland, 466 U.S. at 689. ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'").

Similarly, Erickson's claims that his first two CJA panel attorneys failed to meet with him at the jail—which again, both Larson and Banks have emphatically denied—do not justify relief. The only support for Erickson's claims that his attorneys failed to meet with him is his hypothesis that jail records, if obtained, could substantiate the allegation. But Erickson's trial counsel, with whom Erickson has no complaint, acknowledges that visits with counsel at the Winner jail are not always recorded on a sign-in sheet. Doc. 18 at 3. Erickson's protestations that his court-appointed attorneys failed to meet with him in advance of trial are contradicted by the record. See CR Doc. 50 (denying motion to substitute counsel after Magistrate Judge Moreno met with Erickson and Banks in chambers, resolving at that time differences among and between them); CR Doc. 59 (same). Moreover, neither of the attorneys whom Erickson blames for not visiting him were

16

involved in his trial.   Thus, Erickson cannot show prejudice under the second prong of the Strickland test.

Erickson's ineffective assistance of counsel claim can be dismissed without a hearing. Erickson's allegations that are not plainly contradicted by the record or inherently incredible—and there are few—are vague, unsupported, and would not entitle him to relief.   Accordingly, Erickson's § 2255 petition as it relates to his ineffective assistance of counsel claims against Larson and Banks is dismissed.

## B. Prosecutorial Misconduct

As he has done twice before in this Court, and once before with the Eighth Circuit, Erickson contends he was denied a fair trial because the Government failed to disclose materials related to pretrial interviews it conducted with one of its witnesses. This Court and the Eighth Circuit have squarely addressed and rejected this claim during Erickson's criminal proceedings and appeal. See CR Doc. 133 at 22–24; CR Doc. 150 at 5–7; CR Doc. 180 at 10–11.  "Issues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255." United States v. Wiley, 245 F.3d 750, 752 (8th Cir. 2001) (citing United States v. McGee, 201 F.3d 1022, 1023 (8th Cir. 2000) (per curiam)); Bear Stops v. United States, 339 F.3d 777, 780 (8th Cir. 2003) (same).  The rule against relitigating matters decided on direct appeal through a § 2255 petition is not absolute, but Erickson has neither raised any exceptions to the rule nor alleged any new facts to support his claim. Cf. Wiley, 245 F.3d at 752 (stating that miscarriage-of-justice exception to the rule against relitigating matters decided on direct appeal recognized only when petitioners produce convincing new evidence of actual innocence).

Erickson also makes some vague allegations of prosecutorial misconduct on the grounds that law enforcement allegedly monitored communications between him and his trial counsel in

17

the weeks after Erickson was found guilty. Doc. 1 at 5–6. Prosecutorial misconduct may be found where "the prosecutor's conduct was improper and prejudicial enough to deprive the defendant of a fair trial." United States v. Thropay, 394 F.3d 1004, 1007 (8th Cir. 2005). Even taking this allegation as true, Erickson has made no allegations regarding how monitoring of his communications from jail *after* his conviction could have influenced the outcome of his trial.

No hearing is necessary on Erickson's prosecutorial misconduct claim because the motion and the files and the records of the case conclusively show that he is not entitled to relief. Accordingly, Erickson's § 2255 claims that prosecutorial misconduct denied him the right to a fair trial are dismissed.

## III.    Motion for Counsel

This Court previously deferred ruling on Erickson's motion to appoint counsel, while noting that "a pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." Doc. 4 at 1 (quoting Stevens v. Redwing. 146 F.3d 538, 546 (8th Cir. 1998)). Having considered the complexity of the case, the ability of Erickson to investigate the facts, the existence of conflicting testimony, and the litigant's ability to present his claims, this Court now denies Erickson's motion for counsel anew, which this decision renders moot anyway.

## IV.    Conclusion

For the Reasons explained above, it is hereby

ORDERED that the Government's Motion to Dismiss Erickson's § 2255 Motion, Doc. 16, is granted. It is further

ORDERED that Erickson's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence, Doc. 1, is denied. It is finally

ORDERED that Erickson's Motion for Appointment of Legal Counsel, Doc. 2, is denied.

18

DATED this 3ʳᵈ day of November, 2022.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

19